NUMBER 13-98-106-CV

 

COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI

 ____________________________________________________________________ 



DELO H. CASPARY, Appellant, 



v.

 

WILLIAM K. WOODRUFF, 

WILLIAM K. WOODRUFF & CO., 

AND WKW HOLDINGS, INC., Appellees. 

____________________________________________________________________ 



On appeal from the 36th District Court of Aransas County, Texas. 

____________________________________________________________________ 



O P I N I O N

 

Before Chief Justice Seerden and Justices Hinojosa and Yañez 

Opinion by Justice Hinojosa

 

 Appellant, Delo H. Caspary, appeals from a final judgment in favor of appellees, William K. Woodruff (Woodruff),
William K. Woodruff & Co. (Woodruff & Co.), and WKW Holdings, Inc. (WKW Holdings). We affirm. 

A. Background

 Caspary and Woodruff met in the late 1970s. Caspary made investments and stock trades through Woodruff, who was a
broker in Dallas. In 1981, Woodruff started his own brokerage and investment banking firm called Woodruff & Co. 
Caspary and Woodruff each invested $40,000 of initial capital in the firm. As the only two stockholders, each man held
fifty percent interest. The two men agreed that Woodruff would be the company's president and receive a commission on
the revenues he generated for the company and that Caspary would not be an employee of the company, nor would he
receive a salary. 

 As the company began to grow and hire employees, Caspary and Woodruff agreed to allow the employees to purchase an
ownership interest in the company. This reduced the ownership interest of Caspary and Woodruff to 26.1 percent each. 
With this stock purchase option, Caspary became the only shareholder who was not an employee. In the late 1980s,
Caspary began to receive a consulting fee of eighty thousand dollars per year. 

 In 1990, Woodruff formed WKW Holdings. All of the shareholders of Woodruff & Co. agreed to swap their shares for an
equal number of WKW Holdings shares. WKW Holdings became the sole shareholder of Woodruff & Co. All of WKW
Holdings's shareholders executed a Shareholder's Agreement providing that a shareholder wishing to sell out must first
offer his shares to WKW Holdings. WKW Holdings would then have three years to pay the selling shareholder. 

 In 1993, Woodruff & Co. was approached by Ciena(1) to raise funds for its start-up. Ciena paid Woodruff & Co. with a
small cash payment and a warrant in April 1994. The Ciena warrant gave Woodruff & Co. the right to purchase 215,000
shares of Ciena stock at ten cents per share. In December 1994, Woodruff & Co. decided to exercise the Ciena warrant for
the benefit of several of its employees. Woodruff directed John Wallace ("Wallace")(2) to prepare a schedule for allocating
the Ciena shares, with ten percent of the shares going to Bart Stuck, the consultant who had orchestrated the Ciena deal. 
The next forty-five percent of the shares were to be split evenly between Woodruff and Wallace, who both had done the
majority of the work on the deal. The remaining forty-five percent of the shares were to be distributed to key employees of
Woodruff & Co. Ciena was then notified that Woodruff & Co. was exercising its warrant, and was asked to issue the
appropriate number of Ciena shares to the Woodruff & Co. employees. 

 In early 1995, Caspary informed Woodruff that he wanted to be bought out of WKW Holdings. The buy-out deal was
completed on May 11, 1995, and Caspary was paid $522,000 for his WKW Holdings shares.(3) In return for the cash
Caspary received in the buy-out, Caspary promised in the buy-out agreement that he would not file a lawsuit against
Woodruff or any of the Woodruff companies. In the year after the buy-out, the price of the Ciena shares went from ten
cents a share to fifty-nine dollars a share. 

B. Procedural History

 On September 9, 1996, Caspary filed this suit against Woodruff and Woodruff & Co. for discriminatory dividend
distribution, malicious suppression of dividends, and fraud. On December 21, 1996, Caspary added a cause of action for
statutory fraud. On February 24, 1997, Caspary added causes of action for breach of fiduciary duty, fraud by fiduciary,
conversion, and theft of corporate opportunity. On June 3, 1997, an injunction was granted to enjoin Woodruff and
Woodruff & Co. from "selling, transferring, hypothecating or otherwise encumbering 171,000 shares of Ciena Corporation
. . . through final judgment and collection." On August 26, 1997, Caspary added WKW Holdings as a defendant. On
September 10, 1997, Woodruff, Woodruff & Co., and WKW Holdings counterclaimed for breach of contract and requested
attorney's fees. 

 On September 10, 1997, Woodruff, Woodruff & Co., and WKW Holdings filed a motion for summary judgment on all
issues. On September 12, 1997, Caspary filed a motion for partial summary judgment seeking a declaration that the pro
rata distribution of the Ciena stock was discriminatory. On October 6, 1997, both motions for summary judgment were
denied. 

 On October 15, 1997, the jury returned a non-unanimous verdict finding: (1) the distribution of the Ciena stock was not a
dividend; (2) Woodruff breached his fiduciary duty to Caspary, but Woodruff & Co. and WKW Holdings did not; (3)
Caspary did not suffer any damages as a result of Woodruff's breach; (4) Caspary was not excused from complying with the
agreement not to sue; (5) Caspary failed to comply with the agreement not to sue; (6) Caspary ratified the stock repurchase
agreement; (7) Caspary waived his right to any Ciena stock; and (8) Woodruff, Woodruff & Co., and WKW Holdings did
not act with malice towards Caspary. On December 2, 1997, the trial court signed the final judgment in favor of appellees,
Woodruff, Woodruff & Co., and WKW Holdings, and awarded appellees attorney's fees in the amount of $522,046.22. 
The trial court denied Caspary's motions for new trial, mistrial, and judgment notwithstanding the verdict on January 28,
1998. Caspary then filed notice of appeal on March 2, 1998. 

 By eight issues, Caspary contends the trial court erred: (1) by denying his motion for judgment notwithstanding the verdict
because the Ciena stock distributed to the shareholders of WKW Holdings was a dividend and was discriminatory as to
Caspary; (2) by denying his motion for new trial because the evidence was factually insufficient to support the verdict that
the pro rata distribution of Ciena stock was not a dividend; (3) by refusing to grant a judgment notwithstanding the verdict,
new trial, or mistrial because the answers to jury Question Nos. 2 and 5 were fatally in conflict; (4) by not granting a
judgment notwithstanding the verdict, new trial, or mistrial because the evidence is both factually and legally insufficient to
show that Caspary suffered no damages from Woodruff's breach of fiduciary duty; (5) by submitting jury Question Nos. 5
and 6 and refusing to grant a judgment notwithstanding the verdict or mistrial because the alleged agreement not to sue is
not supported by consideration nor is it enforceable because of Woodruff's breach of fiduciary duty; (6) by denying
Caspary's motions for judgment notwithstanding the verdict or new trial because the evidence is factually and legally
insufficient to support the findings to jury Question Nos. 7 and 8 that Caspary ratified and/or waived his rights to the
dividend; (7) by admitting into evidence, over Caspary's objection, Exhibit Nos. 62 and 66 because they were produced by
appellees only four days before trial, and they were reasonably calculated and probably did lead to an improper judgment
and verdict; and (8) by awarding attorney's fees to appellees because they never presented a claim to Caspary as required by
Texas Civil Practice and Remedies Code section 38.002(2). 

C. Shareholder Dividend

 In his first two issues, Caspary complains the trial court erred in determining that the distribution of Ciena shares was not
a shareholder dividend. Caspary contends the trial court erred in denying his motion for judgment notwithstanding the
verdict because the Ciena stock distribution was a dividend and discriminatory as to him. Caspary also contends the trial
court erred in denying his motion for new trial because the evidence was factually insufficient to support the verdict that the
Ciena stock distribution was not a dividend. 

1. Judgment Notwithstanding the Verdict

 In order for a trial court to disregard a jury's findings and to grant a motion for judgment notwithstanding the verdict, it
must determine that there is no evidence upon which the jury could have relied for its findings. Exxon Corp. v. Quinn, 726
S.W.2d 17, 19 (Tex. 1987);Navarette v. Temple Indep. Sch. Dist., 706 S.W.2d 308, 309 (Tex. 1986). Denial of a motion
for judgment notwithstanding the verdict is proper if there is more than a scintilla of competent evidence to support the
jury's verdict. Navarette, 706 S.W.2d at 309. More than a scintilla of evidence exists if the record reveals some probative
evidence to support the verdict, no matter how small. Ellis County State Bank v. Keever, 888 S.W.2d 790, 801 (Tex.
1994). 

 A party with the burden of proof at trial is entitled to a judgment notwithstanding the verdict on a particular issue only if
the evidence establishes that issue as a matter of law. Cain v. Pruett, 938 S.W.2d 152, 160 (Tex. App.--Dallas 1996, no
writ). We review the denial of Caspary's motion for judgment notwithstanding the verdict under the legal sufficiency
standard. See Brown v. Bank of Galveston, 963 S.W.2d 511, 513 (Tex. 1998). We examine the record in the light most
favorable to the verdict, considering only the evidence and inferences that support the verdict and rejecting evidence and
inferences to the contrary. Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990); Schaefer v. Texas Employers'
Ins. Ass'n, 612 S.W.2d 199, 201 (Tex. 1980). If we find that no evidence supports the finding, we must determine from the
record whether the contrary proposition is established as a matter of law. Sterner v. Marathon, 767 S.W.2d 686, 690 (Tex.
1989); Hickey v. Couchman, 797 S.W.2d 103, 109 (Tex. App.--Corpus Christi 1990, writ denied). 

 Caspary alleges that the Ciena stock distribution solely on the basis of WKW Holdings stock ownership, excluding only
him, was not a bonus, gift, or compensation, but was a dividend. "Whether or not a corporate distribution is a dividend or
something else, such as a loan, gift, compensation for services, repayment of a loan, interest on a loan, or payment for
property purchased, presents a question of fact to be determined in each case." Ramo, Inc. v. English, 500 S.W.2d 461, 467
(Tex. 1973). To weigh the evidence, draw inferences from the facts, and choose between conflicting inferences is the
function of the trier of fact. Id. Therefore, we must determine whether the evidence supports the jury's decision that the
distribution was not a dividend. 

 In Question No. 1 of the jury charge, the jurors were asked: 

Do you find that the exercise of the warrant for Ciena Stock and designated distribution by William K. Woodruff &
Company constituted a dividend to WKW Holding Company's shareholders? 

 

The charge stated further: 



Dividend means a corporate distribution of its property or profits to its own shareholders on account of the shareholders'
ownership status. A corporate dividend may be, but doesn't necessarily have to be, formally declared by the corporate
entity. Not all corporate distributions to shareholders are dividends. Whether a corporate distribution is a dividend or
something else, such as a loan, gift, or compensation, is a factual question to be determined in each case. 



The jury answered "no." 



 On December 4, 1994, Woodruff & Co. executed the warrant agreement with Ciena Corporation for the 215,000 shares of
Ciena stock. The allocation of the shares was as follows: 

 William K. Woodruff, III 82,577 shares 

 Profit Sharing Trust 31,637 shares 

 Jack N. Greenman 12,826 shares 

 William K. Barnard 6,413 shares 

 Andrew W. May 3,420 shares 

 Cass G. Caspary 3,420 shares 

 Jeffrey R. Ohl 2,138 shares 

 John Wallace 49,700 shares 

 Darran B. vonBehren 855 shares 

 Lawrence N. Goldstein 428 shares 

 J. Scott Blome 86 shares 

 Barton W. Stuck 21,500 shares

 Total 215,000 shares 



 Woodruff testified at trial that the Ciena stock was incentive compensation for the employees of Woodruff & Co. He
further testified that in the history of Woodruff & Co., the company had received sixteen different warrants for projects it
had worked on, and it was the company's regular practice to distribute the warrants to key employees and sometimes to the
finder who had provided assistance in the deal, and the warrants had expressly never been distributed to Caspary. Caspary
himself admitted that even though he never received warrants, he expected that Woodruff & Co. would receive warrants for
its underwriting services. 



 There was also testimony from Woodruff and Wallace that Caspary did not receive warrants because Caspary was paid a
consulting fee. Wallace testified that the original stock distribution list made by Wallace included Caspary since he was a
shareholder, but when he presented it to Woodruff to review, Woodruff told him that it was the practice of the firm that
Caspary did not receive the stock distribution. When questioned about Caspary's removal, Woodruff stated that "[Caspary]
gets a consulting fee in lieu of these kinds of distributions." 

 Caspary, Woodruff, and Jack Greenman(4) testified that neither Woodruff & Co. nor WKW Holdings had ever paid a
shareholder dividend during their entire existence. Brad Kinder, an auditor for Woodruff & Co., stated that the company
characterized the distribution as compensation and "complied with all compensation rules and regulations regarding payroll
reporting, taxes, et cetera." Woodruff and Wallace testified that the stock distribution was not a dividend, and they
considered it compensation for income tax purposes. Woodruff testified that it had been the practice of the firm to "break
the warrants into -- down in two different ways: People that worked directly on the project were compensated more than
people that were, I guess you would say keeping the lights on and doing the day-to-day business so that it allowed us to do
other -- other things." 

 Barbara Aldave, the Dean of St. Mary's Law School, testified as an expert for Woodruff, Woodruff & Co., and WKW
Holdings, that, by law, Woodruff & Co. could not give dividends to stockholders of WKW Holdings; it could only give
dividends to its one shareholder, WKW Holdings. Aldave stated that: 

Woodruff & Co. could distribute dividends only to its shareholders, not to shareholders of a different corporation. WKW
Holdings could not have legally distributed a dividend to its shareholders at this time because it had a negative surplus at
the end of 1994. 



 Caspary, Andrew May,(5) Cass Caspary,(6) and Milton Frankfort, Caspary's expert, testified that they believed the stock
distribution was a dividend. Cass Caspary also testified that he had not reported the Ciena stock dividend on his income
tax return. 

 The crux of determining whether the evidence was sufficient is that the trier of fact -- not the appellate court -- was free to
accept or reject all or any portion of any witness's testimony, including expert witnesses. Ryan v. Morgan Spear Assocs.,
Inc., 546 S.W.2d 678, 685 (Tex. Civ. App.--Corpus Christi 1977, writ ref'd n.r.e.). The jury is the exclusive judge of the
credibility of the witnesses and of the weight to be given their testimony. Benoit v. Wilson, 239 S.W.2d 792 at 796 (Tex.
1951). We are not free to substitute our judgment or opinion for that of the jury. Pool v. Ford Motor Co., 715 S.W.2d 629,
634 (Tex. 1986). 

 We conclude the trial court's denial of Caspary's judgment notwithstanding the verdict was proper because there was more
than a scintilla of evidence to support the jury's verdict. We hold the evidence is legally sufficient to support the jury's
finding that the Ciena stock distribution was not a dividend. 

2. Factual Sufficiency

 Caspary contends the evidence was factually insufficient to support the jury's finding that the distribution was not a
dividend. 

 When we review a factual sufficiency or "that the jury's finding was against the great weight and preponderance of the
evidence" point, we examine the entire record. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Hickey, 797 S.W.2d at
110. We set aside the verdict only if it is so contrary to the overwhelming weight and preponderance of the evidence as to
be clearly wrong and manifestly unjust. Cain, 709 S.W.2d at 176; Hickey, 797 S.W.2d at 110. 

 When one considers all the evidence, it is important to note that the stock distribution was not allocated to all employees of
WKW Holdings. Caspary testified: (1) he expected the company to get warrants, (2) he did not agree to be excluded from
receiving warrants, and (3) he did not know of the stock distribution. Woodruff testified there was an agreement that
Caspary would not get warrants because he received a consulting fee, and there is testimony that the stock was distributed
to key employees and Caspary was not an employee. 

 After considering all of the evidence, we conclude the verdict is not so against the overwhelming weight of the evidence
that it is manifestly unjust or wrong. Although there is conflicting evidence as to whether the employees considered the
distribution as compensation or a dividend, and whether Caspary was eligible to receive the warrants, the determination of
whether the distribution was a dividend was a question of fact for the jury. The jury's negative answer to the question
whether the Ciena stock distribution was a dividend is not against the overwhelming weight of the evidence as to be wrong
and unjust. 

 We hold the evidence is legally and factually sufficient to support the jury's finding. Caspary's first and second issues are
overruled. 

D. Admission of Evidence

 In his seventh issue, Caspary contends the trial court erred and abused its discretion by admitting into evidence, over his
objection, appellees' Exhibit Nos. 62 and 66. Caspary argues the exhibits were the only written evidence that the stock
distribution was compensation, the exhibits were produced by appellees within one week of trial, and they were reasonably
calculated and probably did lead to an improper judgment and verdict. 

 The admission and exclusion of evidence is committed to the trial court's sound discretion. Gee v. Liberty Mut. Fire Ins.
Co., 765 S.W.2d 394, 396 (Tex. 1989). A trial court abuses its discretion when it acts without regard for any guiding rules
or principles. City of Brownsville v. Alvarado, 897 S.W.2d 750, 754 (Tex. 1995); Downer v. Aquamarine Operators, Inc.,
701 S.W.2d 238, 241-42 (Tex. 1985). 

 To obtain reversal of a judgment based on error in the admission or exclusion of evidence, appellant must show that the
trial court did in fact commit error, and that the error probably caused the rendition of an improper judgment. Tex. R. App.
P. 44.1(a)(1); McCraw v. Maris, 828 S.W.2d 756, 758 (Tex. 1992); Gee, 765 S.W.2d at 396; Downen v. Texas Gulf Shrimp
Co., 846 S.W.2d 506, 512 (Tex. App.--Corpus Christi 1993, writ denied). 

 As stated by appellees, Exhibit No. 62 is "a working paper produced by Woodruff & Co.'s independent auditor and used as
one of the bases for the conclusion stated in his 1994 audit of Woodruff & Co. that the value of the Ciena warrant was
fairly stated on Woodruff & Co.'s 1994 books as $21,500." Exhibit No. 66 is a "'Distribution Compensation Schedule'
regarding the Ciena stock distribution that was created by Woodruff & Co.'s internal accounting staff to inform those
people who received some of the stock of the dollar value of the shares that Woodruff & Co. would report to the
government as part of each person's compensation." 

 Caspary argues the exhibits should have been excluded because they were presented to him less than thirty days before
trial. Seeformer Tex. R. Civ. P. 166b(6) (Vernon 1984, amended 1998).(7)

 We will assume, arguendo, that the trial court did err in the admission of Exhibit Nos. 62 and 66. The question we must
consider now is whether that error was harmful. See Gee, 765 S.W.2d at 396 (erroneous admission of surprise witness's
testimony is not harmful if that testimony is "merely cumulative of properly admitted testimony"). The erroneous admission
of evidence will not require a reversal unless the record as a whole affords a substantial basis for the reasonable belief that
such evidence may well have caused the rendition of an improper judgment. Ford Motor Co. v. Nowak, 638 S.W.2d 582,
590 (Tex. App.--Corpus Christi 1982, writ ref'd n.r.e.). Exhibit No. 62 is cumulative of the testimony of Woodruff and
Wallace. The relevant portions of the document(8) state: 

Per review of the compensation agreement entered into on April 9, the Company was to receive warrants to purchase
215,000 shares of Hydralites common stock. Subsequently the Company changed its name to Ciena Corporation. On Dec
9, 1994 the Company converted its warrants to 215,000 shares of stock at a cost of $21,500. The company then in Jan 95
had the shares transferred on a pro rata basis to the emp shareholders of WKW Holdings as compensate. Ciena was a
private company. The market value of $21,500 is read at 12/31/94 as it was distributed to shareholders as compensation in
Jan 95 [??] $21,500. 



The warrant had no value as the cost to convert to common was 21,500 and the c/s was not a marketable security. 

 Caspary argues that Exhibit No. 62 was used to support Brad Kinder's testimony that the Ciena stock had no value and that
it was compensation. We conclude the admission of Exhibit No. 62 was harmless and did not cause an improper judgment
because it is merely cumulative of the testimony of Woodruff and Wallace that the distribution was considered
compensation. 

 Exhibit No. 66 is also cumulative of the testimony at trial. The exhibit simply reiterates the testimony of Wallace as to
who received shares and the number of shares they received. The title on the document "Ciena Corporation -- Common
Stock Distribution Compensation Schedule 1995" also simply reiterates the testimony of Woodruff and Wallace that the
distribution was compensation. 

 Therefore, we hold that the admission of Exhibit Nos. 62 and 66, if error, was harmless error. Caspary's seventh issue is
overruled. 

E. Jury Charge

 1. Question Nos. 2 and 5

 In his third issue, Caspary contends that the inclusion of Question Nos. 2 and 5 in the jury charge created a conflict in the
jury's verdict. Caspary contends an affirmative finding of fraud in response to Question No. 2 negated the jury's answer to
Question No. 5.(9) Without deciding that the jury's answers were in conflict, we hold the conflict, if any, was waived. 

 To preserve error when jury answers fatally conflict, appellant must object to the conflict before the jury is discharged. 
City of Port Isabel v. Shiba, 976 S.W.2d 856, 860 (Tex. App.--Corpus Christi 1998, pet. denied); Torres v. Caterpillar,
Inc., 928 S.W.2d 233, 244-45 (Tex. App.--San Antonio 1996, writ denied); Roling v. Alamo Group (USA), Inc., 840
S.W.2d 107, 109-10 (Tex. App.--Eastland 1992, writ denied). 

 Caspary did not object to the jury's answers before the jury was discharged. Caspary first raised the issue of irreconcilable
conflict in his motion for new trial on December 29, 1997. Therefore, Caspary has waived any objection to a conflict in the
jury's answers to Question Nos. 2 and 5. Caspary's third issue is overruled. 

2. Question Nos. 5 and 6

 In his fifth issue, Caspary contends the trial court erred in submitting Question Nos. 5 and 6 because the alleged
agreement not to sue is not supported by consideration, nor is it enforceable because of Woodruff's breach of fiduciary duty
and fraud.(10) Caspary argues that since the jury found that Woodruff breached his fiduciary duty to Caspary, the covenant
not to sue is of no effect. 

 Caspary argues that Question Nos. 5 and 6 are in conflict with the jury's finding that Woodruff breached his fiduciary duty
to Caspary.(11) Because Caspary did not object to the jury's answers before the jury was discharged, he has waived this error. 
Shiba, 976 S.W.2d at 860;Torres, 928 S.W.2d at 244-45. Caspary's fifth issue is overruled. 

3. Question Nos. 7 and 8

 In his sixth issue, Caspary contends the evidence is factually and legally insufficient to support the jury's findings to
Question Nos. 7 and 8. While Caspary objected to these questions at trial, he is not alleging that the trial court erred in
submitting them to the jury or that the jury's findings fatally conflict. Rather, Caspary contends there is no basis for the
jury's answers to Question Nos. 7 and 8. 

 When we review a legal sufficiency or "that the matter was established as a matter of law" point, we examine the record
for evidence supporting the finding of fact and ignore all evidence to the contrary. Sterner, 767 S.W.2d at 690; Hickey, 797
S.W.2d at 109. If we find that no evidence supports the finding, we must determine from the record whether the contrary
proposition is established as a matter of law. Sterner, 767 S.W.2d at 690; Hickey, 797 S.W.2d at 109. 

 When we review a factual sufficiency or "that the jury's finding was against the great weight and preponderance of the
evidence" point, we examine the entire record. Cain, 709 S.W.2d at 176; Hickey, 797 S.W.2d at 110. We set aside the
verdict only if it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and
manifestly unjust. Cain, 709 S.W.2d at 176; Hickey, 797 S.W.2d at 110. 

 Question No. 7 states: 

 Do you find that Delo H. Caspary ratified the stock repurchase agreement in question? 



 Ratification occurs when a person, allegedly, induced by a non-disclosure to enter into an agreement, continues to retain
the benefits under an agreement or conducts himself so as to recognize an agreement as binding after discovering the facts
giving rise to the claimed non-disclosure. 



The jury answered "yes." 

 By answering "yes" to Question No. 7, the jury determined that Caspary ratified the stock repurchase agreement by
retaining the benefits he received under it. Caspary argues he was entitled to payment of the book value of his stock under
the terms of the shareholders' agreement, and retention of payment could only ratify the shareholders' agreement. 

 Caspary testified he has kept the $522,000 he was paid under the stock repurchase agreement, and he has not offered to
return the money to WKW Holdings. Caspary testified that he "would have never signed the agreement not to sue, and
probably would have never sold my stock at that particular time if I would have been aware of the Ciena stock." Caspary
further testified that he never agreed to be excluded from receipt of the warrants because "that isn't my nature." As soon as
he discovered the distribution of the Ciena warrants, he contacted Wallace and Woodruff to find out why he had not
received them. 

 We hold the evidence is legally and factually sufficient to support the jury's finding that Caspary ratified the stock
repurchase agreement by retaining the $522,000 benefit he received from WKW Holdings. Although Caspary did attempt
to determine why he did not receive the Ciena warrants, and he testified that he would not have gone through with the
buy-out if he had known about the warrants, the fact that Caspary has retained the money from the buy-out is sufficient for
the jury to determine that Caspary has conducted himself in a manner in which he recognizes the agreement, and, thus,
ratified the stock repurchase agreement.(12)

 Question No. 8 states: 

 Do you find that Delo H. Caspary waived his right to pursue any claim for non-disclosure relating to the exercise of the
warrant in question? 



 "WAIVER" means an intentional surrender of a known right or intentional conduct inconsistent with claiming the right. 



The jury answered "yes." 

 Woodruff testified that he and Caspary had discussed the receipt of warrants on several occasions and Caspary had stated
that he did not care to receive the warrants. Woodruff also testified that the receipt of warrants was discussed in company
meetings. Woodruff stated, "[Caspary] gets a consulting fee in lieu of these kinds of distributions." Caspary himself
admitted he expected that Woodruff & Co. would receive warrants for its underwriting services. Wallace testified that just
prior to the buy-out, he had discussed with Caspary the financial prospects of WKW Holdings, including Ciena. 

 We hold the evidence is legally and factually sufficient for the jury to determine that Caspary waived his right to pursue
any claim for non-disclosure relating to the exercise of the Ciena warrants. The jury was free to believe Wallace and
Woodruff when they testified that Caspary made it known that he did not want warrants, instead he received a consulting
fee, and he made no attempt to attend company meetings where the warrants were openly discussed. Appellant's sixth issue
is overruled. 

F. Damages

 In his fourth issue, Caspary contends the trial court erred by not disregarding the jury's finding that he suffered no
damages from Woodruff's breach of fiduciary duty. Caspary argues the evidence is both factually and legally insufficient
that Caspary suffered no damages from Woodruff's breach of fiduciary duty and Woodruff should not be able to retain the
benefit of his breach. 

 In Question No. 2 of the jury charge, the jury found that Woodruff breached a fiduciary duty to Caspary in connection with
the acquisition and distribution of the Ciena warrant and stock. 



 In Question No. 4, the jury was asked about damages. It states: 

What sum of money, if any, if paid now in cash would fairly compensate Delo Caspary for his damages, if any, that were
proximately caused by defendants' conduct: 



a. Breach of fiduciary duty 



You are instructed that a person is entitled to recover for "pecuniary loss" suffered by reason of a breach of fiduciary duty. 
You are instructed that "pecuniary loss" is the actual amount of a person's economic loss resulting directly from and
proximately caused by the breach of fiduciary duty, if any, practiced against a person. 



The jury found $ 0.00 damages. 

 Courts impose damages on parties who violate a fiduciary duty to punish the party's breach of trust. Phillips v. Phillips,
820 S.W.2d 785, 792 (Tex. 1991). The courts of this State recognize that the relationship of officers and directors to a
corporation is a fiduciary one imposing upon them the duty to exercise their powers as officers and directors solely for the
benefit of the corporation and its stockholders. Duncan v. Lichtenberger, 671 S.W.2d 948, 952 (Tex. App.--Fort Worth
1984, writ ref'd n.r.e.). Equitable relief is available for a breach of fiduciary duty. Id. In International Bankers Life Ins. Co.
v. Holloway, 368 S.W.2d 567 (Tex. 1963), the supreme court found that the defendants had breached a fiduciary duty owed
to the corporation and stated, "there should be a deterrent to conduct which equity condemns and for which it will grant
relief. The limits beyond which equity should not go in its exactions are discoverable in the facts of each case which give
rise to equitable relief." International Bankers, 368 S.W.2d at 584. 

 While the jury did find that Woodruff breached his fiduciary duty to Caspary, it also found that Caspary waived his right to
pursue any claim for non-disclosure of the exercise of the warrant.(13) The jury further found that Caspary suffered no
damages. Although the jury felt that Woodruff breached his duty to Caspary, this does not necessarily indicate that Caspary
suffered an economic loss. The jury may have simply found that there was a breach of the fiduciary duty because they
concluded that Caspary placed trust and confidence in Woodruff and relied on him to protect Caspary's interests, and by not
ensuring that Caspary actually knew of the Ciena warrants, Woodruff breached the trust that Caspary had instilled in him. 
Woodruff's breach did not mean that Caspary suffered damages, especially since the jury found that Caspary waived his
right to pursue the claim for nondisclosure. 

 During the trial, the jury heard testimony from Wallace and Woodruff that Caspary never received warrants because he
received $80,000 a year as a consulting fee. There was also testimony that Caspary told Woodruff that he did not want any
warrants obtained by Woodruff & Co. While Caspary testified otherwise, the jury was free to believe that Caspary would
not have received the warrants even if he had known about them. Furthermore, Wallace testified that Caspary knew of the
Ciena warrants before he entered into the buy-out agreement. 

 Accordingly, we hold the evidence is legally and factually sufficient to support the jury's finding of no damages, and the
trial court did not err in denying Caspary's motion for judgment notwithstanding the verdict. 

 Appellant refers this Court to the recent supreme court case of Burrow v. Arce, 997 S.W.2d 229 (Tex. 1999), for the
proposition that where a breach of fiduciary duty occurs, even when there are no actual damages, forfeiture of the fee
earned is the appropriate remedy. Caspary contends the fee earned by Woodruff, the Ciena stock, should be forfeited. We
disagree. 

 Burrow involved the breach of the fiduciary duty of attorneys to their clients. The supreme court stated, 

In principle, a person who agrees to perform compensable services in a relationship of trust and violates that relationship
breaches the agreement, express or implied, on which the right to compensation is based. The person is not entitled to be
paid when he has not provided the loyalty bargained for and promised. 



Id. at 237-38. The supreme court further stated that "forfeiture is appropriate without regard to whether the breach of
fiduciary duty resulted in damages." Id. at 239-40. 

 The forfeiture of the fee paid in Burrow does not apply in the present case because Caspary did not pay a fee to Woodruff. 
Caspary contends the fee that should be forfeited is the Ciena stock. The Ciena stock was earned by Woodruff and the
employees of Woodruff & Co. in their dealings with Ciena. Thus, the Ciena stock was earned in a relationship to which
Caspary was not a party. We conclude that Caspary's reliance on Burrow, for his contention that there should be a
disgorgement of the Ciena stock earned by Woodruff since it is the fee obtained by Woodruff, is misplaced. Caspary's
fourth issue is overruled. 

G. Attorney's Fees

 In his eighth issue on appeal, Caspary contends the trial court erred in awarding attorney's fees to appellees. Caspary
argues that: (1) appellees failed to make presentment; (2) appellees' pleadings do not support an award of attorney's fees;
and (3) appellees failed to present evidence of damages to the jury. 

1. Presentment

 The trial court awarded $596,201.60 in attorney's fees to Woodruff, Woodruff & Co., and WKW Holdings. 

 The final judgment states: 

It is further ordered, adjudged, and decreed that defendants and counter-plaintiffs, William K. Woodruff & Co., William K.
Woodruff, and WKW Holdings, Inc., recover from plaintiff and counter-defendant and against, Delo H. Caspary, their
reasonable and necessary attorneys' fees as damages for the breach of the covenant not to sue in accordance with the jury
verdict and the agreed to submission of the amount of such fees to trial by the Court, which amount the court finds to be
$596,201.60, as the reasonable and necessary attorneys' fees . . . . 



While we do not agree with appellees' contention that the attorney's fees were awarded as actual damages for Caspary's
breach of the covenant not to sue, we do conclude appellees were entitled, under section 38.001 of the Texas Civil Practice
and Remedies Code, to the attorney's fees that they were awarded. See Tex. Civ. Prac. & Rem. Code Ann. § 38.001
(Vernon 1997). 

 The stock repurchase agreement entered into by Caspary stated, in relevant part: 

Sellers covenant . . . (ii) to neither institute nor participate in any arbitration or legal action against William K. Woodruff &
Company Incorporated, WKW Holdings, William K. Woodruff III or any of its or his affiliates, with the sole exception
related to the recovery of amounts owing to them pursuant to Clawback Value provision above. 



Caspary breached this written contract by initiating the present suit, thus, appellees may be awarded attorney's fees. See Id. 

 When a prevailing party in a breach of contract suit seeks attorney's fees under Section 38.001, makes its proof, and meets
the requirements of the section, an award of attorney's fees is mandatory. Arguelles v. Kaplan, 736 S.W.2d 782, 786 (Tex.
App.--Corpus Christi 1987, writ ref'd n.r.e.). When a party prevails and establishes a valid claim, the party can be entitled
to attorney's fees without achieving a monetary recovery on the claim itself. Martini v. Tatum, 776 S.W.2d 666, 670 (Tex.
App.--Amarillo 1989, writ denied). To be entitled to attorney's fees the defendant must make the presentment of the claim
to the plaintiff before filing a counterclaim. Boy Scouts of Amer. v. Responsive Terminal Sys., Inc., 790 S.W.2d 738, 749
(Tex. App.--Dallas 1990, writ denied). 

 Caspary argues that appellees did not make the proper presentment under section 38.002 of the civil practice and remedies
code. See Tex. Civ. Prac. & Rem. Code Ann. § 38.002 (Vernon 1997). We disagree. No particular form of presentment is
required. Jones v. Kelley, 614 S.W.2d 95, 100 (Tex. 1981). 

 In its first amended answer, Woodruff, Woodruff & Co., and WKW Holdings, raised the affirmative defense of Caspary's
contractual agreement not to sue. Appellees asked that they be allowed to "recover the costs expended on their behalf." In
appellees' second amended answer and original counterclaim, appellees sought recovery of their reasonable and necessary
attorney's fees under section 38.001 of the civil practice and remedies code. The record reflects appellees made numerous
assertions that Caspary had breached the covenant not to sue. Thus, Caspary was made aware of appellees' claim of his
breach of the covenant not to sue and the fact that appellees had retained counsel to assist in their defense. We conclude
appellees clearly satisfied the requirement to make presentment to Caspary. 

2. Actual Damages

 Caspary contends appellees' counterclaim contained no pleadings for actual damages, thus, they are not entitled to recover
the award of attorney's fees. While the final judgment reads as though the attorney's fees were awarded as "damages," we
do not agree with Caspary that they were awarded as "actual damages." As we have found above, appellees were entitled to
attorney's fees for Caspary's breach of the covenant not to sue, and the trial court properly awarded them. Thus, Caspary's
claim that there were no pleadings for actual damages is without merit. 

3. Attorney's Fees As Damages

 Caspary contends appellees' counterclaim for breach of contract did not come until less than one month prior to trial, thus,
the vast majority of the claimed attorney's fees were incurred in defense against Caspary's claim, rather than in support of
appellees' breach of contract claim. Consequently, Caspary argues appellees are not entitled to damages for defending this
suit. 

 The general rule is that expenses incurred in defending a suit are not recoverable as costs or damages unless recovery for
such items is expressly provided for by statute or is recoverable under equitable principles. Rogers v. Cassidy, 946 S.W.2d
439, 448 (Tex. App.--Corpus Christi 1997, no writ). 

 We conclude the expenses incurred by Woodruff, Woodruff & Co., and WKW Holdings in this suit are recoverable under
equitable principles. Caspary had contractually agreed not to sue, he then breached the contract, and appellees were forced
to expend time and money to defend against Caspary's allegations. Equity compels this Court to conclude that appellees
were entitled to the attorney's fees that they incurred in defending this case caused by Caspary's breach of the Stock
Repurchase Agreement. 

4. Excessive Attorney's Fees

 Caspary further contends the attorney's fees awarded to appellees are excessive. 

 The determination of the amount to be awarded as a reasonable attorney's fee is a question of fact to be determined by the
trier of fact, but the award must be supported by competent evidence. Great Am. Reserve Ins. Co. v. Britton, 406 S.W.2d
901 (Tex. 1966). The standard of review is an abuse of discretion. A trial court may be reversed for abusing its discretion
only when the court of appeals finds the court acted in an unreasonable, arbitrary manner, or acts without reference to any
guiding rules and principles. Downer, 701 S.W.2d at 241-42. 

 Factors to be considered in determining the reasonableness of attorney's fees include the time and labor involved, the
nature and complexities of the case, the value of the interest involved, the extent of the responsibilities assumed by the
attorney, and the benefits resulting to the client from the attorney's services. Alexander v. Cooper, 843 S.W.2d 644, 647
(Tex. App.--Corpus Christi 1992, no writ). 

 We hold the trial court did not abuse its discretion in awarding $596,201.60 in attorney's fees due to: (1) the fact that
appellees were subjected to this suit after Caspary had contractually agreed not to sue; (2) the complexity involved in
researching and determining whether the distribution of Ciena stock was a dividend or compensation; (3) the time involved
in developing the facts of the case by speaking with the various witnesses; and (4) the value sued for by Caspary ranged
from six million to nine million dollars. Caspary's eighth issue is overruled. 

H. Motion For New Trial 

 In his second, third, fourth, and sixth issues, Caspary also contends the trial court erred in denying his motion for new trial. 
A trial court has wide discretion in denying a motion for new trial, and its action will not be disturbed on appeal absent a
showing of an abuse of discretion. Jackson v. Van Winkle, 660 S.W.2d 807, 809 (Tex. 1983);Delgado v. Hernandez, 951
S.W.2d 97, 98 (Tex. App.--Corpus Christi 1997, no writ). The standard of review depends on the complaint preserved by
the motion for new trial. Delgado, 951 S.W.2d at 98. 

 Given our holdings in each of these issues, we do not find the trial court abused its discretion by denying Caspary's motion
for new trial. 

 The judgment of the trial court is affirmed. 



 FEDERICO G. HINOJOSA 

 Justice 



Chief Justice Robert J. Seerden not participating. 



Do not publish. Tex. R. App. P. 47.3. 



Opinion delivered and filed this the 

31st day of August, 2000. 

1. When Woodruff & Co. was first approached, Ciena was named Hydralite. During the course of their association, the
name was changed to Ciena.

2. John Wallace was in charge of corporate finance at Woodruff & Co.

3. Jack Greenman and Cass Caspary sold their stocks to WKW Holdings in the same buy-out deal as Delo Caspary.

4. Jack Greenman was a salesman for Woodruff & Co.

5. Andrew May was a salesman for Woodruff & Co.

6. Cass Caspary worked in the trading department of Woodruff & Co.

7. The Texas Rules of Civil Procedure were amended November 9, 1998 with the changes taking effect January 1, 1999. 
Rule 166b is now Rule 193.5. The objection to the supplementation of Caspary's discovery request occurred before
January 1, 1999, thus it need not comply with new rule 193.5, but rather with former rule 166b. 

8. The document is the handwritten notes of Woodruff & Co.'s auditor, Brad Kinder. We are unable to decipher some of
the words and have placed question marks [?] in their place. We conclude the meaning of the document does not change
with the absence of these words.

9. Question No. 2 asked the jury: 



Did any of the following breach a fiduciary duty, if any, owed to Delo H. Caspary in connection with the acquisition and
distribution of the Ciena warrant and stock? 



 A. William K. Woodruff 

 B. William K. Woodruff & Company 

 C. WKW Holdings, Inc. 



The jury answered "yes" to only William K. Woodruff. 



Question No. 5 asked the jury: 



Was Delo Caspary excused from complying with the agreement not to sue? 



The jury answered "no."

10. Question No. 6 asked the jury: 



Did Plaintiff Delo Caspary fail to comply with his agreement not to sue Defendants, contained in the May 11, 1995, stock
repurchase term sheet? 



The jury answered "yes."

11. Although Caspary does not expressly claim that the jury's answers to Question Nos. 2, 5, and 6 are in "fatal conflict" it
appears to this Court that is what he is arguing when he states in his brief "The fact that Woodruff breached his fiduciary
duty is conclusive and un-rebutted. Thus Question Nos. 5 and 6 should not have been submitted and the Court's failure to
disregard them is in error." 

12. Assuming, arguendo, that Caspary's retention of payment ratified the Shareholders' Agreement, as Caspary suggests, it
would also ratify the Stock Repurchase Agreement because the Stock Repurchase Agreement is the result of carrying out
the terms set forth in the Shareholders' Agreement for the corporation to buy a shareholder's stock.

13. Question No. 8 of the jury charge states: 



Do you find that Delo H. Caspary waived his right to pursue any claim for non-disclosure relating to the exercise of the
warrant in question? 

 

"Waiver" means an intentional surrender of a known right or intentional conduct inconsistent with claiming the right. 



The jury answered "yes."